CHRISTOPHER A. STECHER, CASB No. 215329
christopher.stecher@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California  94133
Telephone:     (415) 398-6000
Facsimile:      (415) 981-0136

TIMOTHY P. HARKNESS (*pro hac vice to be filed*)
timothy.harkness@freshfields.com
DAVID Y. LIVSHIZ (*pro hac vice to be filed*)
david.livshiz@freshfields.com
WERONIKA BUKOWSKI (*pro hac vice to be filed*)
weronika.bukowski@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone:     (212) 277-4000
Facsimile:      (212) 277-4001

*Attorneys for Applicant Palantir Technologies, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EX PARTE APPLICATION OF PALANTIR TECHNOLOGIES, INC. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Misc. Case No. _____<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICANT PALANTIR TECHNOLOGIES, INC.'S EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS** |

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................................... 4

    A. The Parties ................................................................................................................ 4

    B. Abramowitz's Relationship With Palantir ................................................................ 4

    C. Abramowitz Misappropriates Palantir's Trade Secrets And Seeks To Patent Palantir's Inventions As His Own .............................................................................. 5

        1. The Cyber Technology .................................................................................. 5

        2. The Healthcare Technology ........................................................................... 6

    D. Palantir Fights Back .................................................................................................. 7

    E. Palantir Commences The German Proceeding ......................................................... 8

III. REQUESTED DISCOVERY ................................................................................................ 8

IV. ARGUMENT ........................................................................................................................ 9

    A. Palantir's Application Meets The Section 1782 Requirements ............................... 10

        1. Palantir is an "Interested Person" ................................................................ 11

        2. The Application Seeks Documentary and Testimonial Evidence ............... 11

        3. The Evidence Is For Use in a Foreign Proceeding ...................................... 11

        4. The Discovery Subject is Located in the Northern District of California ..................................................................................................... 12

    B. The Intel Discretionary Factors Strongly Favor Granting Discovery ..................... 12

        1. The German Tribunal May Not Compel Discovery of Evidence in the United States ......................................................................................... 12

        2. The German Tribunal Is Not Hostile To This Application .......................... 13

        3. The Application Has Not Been Filed to Circumvent Any Law or Rule .............................................................................................................. 14

        4. The Discovery Requests Are Not Unduly Intrusive or Burdensome ................................................................................................ 15

    C. This Court May And Should Order Abramowitz To Preserve Evidence Pending Compliance With An Order Pursuant To Section 1782 ............................. 15

V. CONCLUSION ................................................................................................................... 16

- ii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PALANTIR TECHNOLOGIES, INC.'S APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782— CASE NO.

**TABLE OF AUTHORITIES**

**Cases**                                **Page(s)**

In re AIS GmbH Aachen Innovative Solutions, No. 5:16-mc-80094-EJD, 2017 U.S. Dist. LEXIS 114288 (N.D. Cal. July 21, 2017) ................................................................. 12

In re Appl. of Auto-Guadeloupe Investissement S.A., No. 12-0221, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ............................................. 13

Appl. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262 (11th Cir. 2014) ...................................................................................... 9

In re Appl. of Malev Hungarian Airlines, 964 F.2d 97 (2d Cir. 1992) ................................................................................................ 10

In re Appl. of Proctor & Gamble Co., 334 F. Supp. 2d 1112 (E.D. Wis. 2004) ......................................................................... 13

Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76 (2d Cir. 2012) ........................................................................................... 9, 12

In re Chevron, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) ............................................................................... 9

In re Clerici, 481 F.3d 1324 (11th Cir. 2007) ................................................................. 12

Consorcio Minero S.A., v. Doe Run Resources Corp., No. 11-0583, 2011 WL 4550200 (E.D. Mo. Sept. 30, 2011) ........................................ 13

Cryolife v. Tenaxis Medical, No. C08-0514 HRL, 2009 U.S. Dist. LEXIS 3416 (N.D. Cal. Jan. 13, 2009) ............................................................................................... 11, 14, 15

In re Republic of Ecuador, No. C-10-80225 MISC CRB (EMC), 2010 U.S. Dist. LEXIS 102158 (S.D. Cal. Sept. 10, 2010) ............................................................................................................. 9, 15

In re Eurasian Natural Resources Corp., No. 18-MC-80041-LB, 2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ......................... 15

Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095 (2d Cir. 1995) ............................................................................................. 13

In re Ex Parte Motorola Mobility, LLC, No. C 12-80243 EJD (PSG), 2012 WL 4936609 (N.D. Cal. Oct. 17, 2012) .................. 14

Heraeus Kulzer GmbH v. Biomet, 633 F.3d 591 (7th Cir. 2011) ..................................................................................... 13, 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PALANTIR TECHNOLOGIES, INC.'S APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782— CASE NO.

Intel Corp. v. Advanced Micro Devices, Inc.,
   542 U.S. 241 (2004) ............................................................................................... *passim*

In re IPCom GMBH & Co. KG,
   No. 5:14-MC-80037-EJD-PSG, 2014 WL 12772090 (N.D. Cal. Apr. 10, 2014) ......................13, 14

John Deere Ltd. v. Sperry Corp.,
   754 F.2d 132 (3d Cir. 1985) ................................................................................................10

In re Machida,
   No. 8:15-mc-00028-UA, 2015 WL 12830388 (C.D. Cal. Nov. 3, 2015)........................................15

In re Mak,
   No. C 12-80118 MISC SI, 2012 WL 1965896 (N.D. Cal. Mar 31, 2012) ......................................11

In re Servicio Pan Americano de Proteccion,
   354 F. Supp. 2d 269 (S.D.N.Y. 2004) ...................................................................................13

Siemens AG v. Western Digital Corp.,
   No. 8:13-cv-01407-CAS-(AJWx), 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ............................10

In re Sociedad Militar Seguro de Vida,
   985 F. Supp. 2d 1375 (N.D.Ga. 2013)..................................................................................13

In re Technik, No. C11-1386-JCC, 2011 U.S. Dist. LEXIS 162826 (W.D. Wash. Oct.
   6, 2011) ........................................................................................................................12, 13

In re Varian Med. Sys Int'nl AG,
   No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911 (N.D. Cal. Mar. 24, 2016) .......................14

Weber v. Finker,
   554 F.3d 1379 (11th Cir. 2009) ...........................................................................................11

**Statutes**

28 U.S.C. § 1782 ............................................................................................................... *passim*

Applicant Palantir Technologies, Inc. ("Palantir" or the "Applicant"), by and through its undersigned attorneys, respectfully seeks an Order pursuant to 28 U.S.C. § 1782 to obtain discovery from Marc L. Abramowitz ("Abramowitz" or "Discovery Subject") for use in pending and anticipated litigation proceedings ("German Proceedings") in the Regional Court Munich 1, in Munich, Federal Republic of Germany ("German Court").

## I.  PRELIMINARY STATEMENT

The dispute underlying the German Proceedings concerns Abramowitz's attempt to take advantage of his position as a trusted advisor and early investor in Palantir to reap for himself profits at Palantir's expense by patenting, in his sole name, inventions made by, and belonging to, Palantir.

Founded in 2004, Palantir is a software and services company. Today, Palantir is considered one of Silicon Valley's most valuable privately held technology companies, specializing in data analysis. Palantir's products are deployed at the most critical government, commercial, and non-profit institutions in the world to solve the complicated problems posed by "big data."

As an early investor in Palantir, Abramowitz became a respected confidant and advisor to Palantir and its senior executives. Trading on his role as an early investor and confidant, Abramowitz received confidential information about Palantir's business and its most sensitive business strategies and trade secrets, always under the pretense that his and Palantir's interests were identical. However, unbeknownst to Palantir and its senior management, by 2014, Abramowitz had switched sides. Rather than acting in the best interest of Palantir, and notwithstanding that he had no history of technical invention or patent innovation, Abramowitz filed patent applications in the United States and the European Union naming himself as the sole inventor and assignee in an attempt to steal inventions developed by Palantir over the course of many years of hard work.

As relevant here, Abramowitz filed patent applications WO 2016/064919 and WO 2016/065049, which became, *inter alia*, effective as European Patent Applications EP 15851807.6 ("EP 807") and EP 15852487.6 ("EP 487," and collectively with EP 807, "Cyber Patents"). In general terms, the Cyber Patents concern technology invented by Palantir to assist with the efficient detection, defense, and prevention of cyber attacks, as well as the risk-assessment and provision of insurance

against such attacks.  The disclosed inventions are distinguished, *inter alia*, by a real-time retrieval, monitoring, and evaluation of large amounts of data on cyber attacks such as for the provision of respective insurance.  In addition, the disclosed inventions focus on pooling forces to detect and ward off cyber attacks via a consortium and the associated evaluation of large amounts of data.  While Abramowitz's applications for the Cyber Patents claim that he is responsible for the technological innovation underlying the Cyber Patents, they are in fact based on the trade secrets that Abramowitz stole from Palantir.

In addition, on October 29, 2015, Abramowitz filed international patent applications WO 2016/069861 and WO 2016/069857, which became, inter alia, effective as European Patent Applications EP 15854273.8 ("EP 273") and EP 15854898.2 ("EP 898" and collectively, with EP 273, the "Healthcare Patents," and collectively with the Cyber Patents, the "Challenged Patents").  In general terms, the Healthcare Patents concern technology invented by Palantir to improve the description of clinical trial for prescriptive drugs.  This technology can interpret and analyze various data for purposes of patient recruitment and trial.  In addition, Palantir developed technology to provide insurance risk assessments, including, for example, patient diagnoses not accounted for by health insurance companies and health fraud risk.  While Abramowitz's applications for the Healthcare Patents claim that he is responsible for the technological innovation underlying the Healthcare Patents, they are in fact based on trade secrets Abramowitz stole from Palantir.

Palantir eventually discovered Abramowitz's patent applications.  Having uncovered Abramowitz's betrayal, Palantir took steps to protect the intellectual property that was rightfully Palantir's.  Palantir commenced proceedings before the United States Patent and Trademark Office ("U.S. PTO") to establish its rights with respect to the technology described in the Cyber Patents, and also commenced a civil action in California state court.

In addition, consistent with its strategy of protecting its intellectual property, on August 6, 2018, Palantir brought suit in Munich, Germany seeking a declaration that Abramowitz was not entitled to obtain the Cyber Patents, and that it is Palantir, not Abramowitz, that is entitled to patent the inventions described in the Cyber Patents.  In this action, Palantir also seeks compensation for all damages suffered as a result of Abramowitz's filing of the Cyber Patents in Europe and Germany

(respectively filing the concerned international applications and naming the European Patent Organization's member states and Germany as designated states) and discontinuing these application proceedings. Palantir also intends to bring a similar suit in Germany seeking declaratory relief and damages arising from Abramowitz's wrongful filing of the Healthcare Patents.

Through this Application, Palantir seeks evidence for use in the German Proceedings. As demonstrated below, Palantir's Application should be granted.

First, Palantir satisfies each statutory requirement for 1782 discovery. Palantir is an interested person in the German Proceeding, in which Palantir has already brought claims against Abramowitz, and anticipates bringing additional claims shortly. Abramowitz is found in this District, and the requested discovery is for use in the German Proceeding. The requirements of Section 1782 are accordingly satisfied.

Second, the discretionary factors set out by the Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004) favor the granting of the requested discovery. While Abramowitz is a party to the German Proceeding, the discovery Palantir seeks here is not, and will not be, available in the German Proceeding due to limited pre-trial discovery available in Germany. Faced with similar situations, numerous courts have granted 1782 discovery in aid of German proceedings, finding Section 1782 discovery to be the most effective and efficient way to obtain evidence that is relevant to such proceedings. Moreover, while such discovery is not available through the German court process, German courts will accept assistance provided by a United States court as German courts routinely consider evidence obtained pursuant to Section 1782 where, as here, the discovery sought through Section 1782 is relevant to the issues being litigated in the German Proceeding. Finally, the requests are modest and seek documents and testimony from Abramowitz, an individual located in this District, making that evidence most accessible through a U.S. court.

In short, Abramowitz has information highly relevant to the claims asserted in the German Proceeding. This Court should grant Palantir the discovery it seeks to obtain this information. Further, granting the Application will foster Section 1782's twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries to similarly assist our courts. Finally, granting Section 1782 discovery is particularly appropriate here, where Abramowitz

engaged in purposeful conduct in Europe which gave rise to the German Proceeding, in connection with which the Applicant seeks discovery. Palantir's Application should be granted.

## II.      FACTUAL BACKGROUND

### A.      The Parties

Applicant Palantir Technologies, Inc. is a Delaware corporation with its principal place of business at 100 Hamilton Avenue, Palo Alto, California, 94301.

Marc L. Abramowitz is a citizen of the United States, who resides at 3455 Washington Street, San Francisco, CA 94118.

### B.      Abramowitz's Relationship with Palantir

Palantir was founded in 2004, and has become one of Silicon Valley's most valuable privately held companies, focusing on big data analytics. With this purpose in mind, Palantir has devoted many years to the constant development, testing and invention of a wide variety of concepts for processing and analyzing data. Palantir's objective is to create solutions that enable customers to carry out the most efficient analysis and evaluation of data possible, as well as to create a user-friendly interface, both at the level of the data input and with regard to the presentation of its evaluation.

Abramowitz was one of the early equity investors in Palantir. See Waldeck Decl., Ex. A, at 5. Over time, Abramowitz established close relationships with Palantir's founders, officers and employees. As a result, he was viewed as a trusted investor and advisor by Palantir. Abramowitz fostered these relationships of confidence and held himself out as someone whose interests were completely aligned with Palantir. See id., at 5-6.

Over the years, Abramowitz held frequent exchanges with Palantir and, as an investor and trusted advisor, enjoyed its confidence. In this context, Abramowitz visited Palantir on numerous occasions and engaged in regular discussions with Palantir's senior management about the company's most sensitive business strategies and trade secrets. See id., at 6. In particular, Abramowitz regularly inquired specifically about particular projects of Palantir and asked about concepts and applications for new technologies in his role as a shareholder and (purported) trusted advisor. Given his role and the associated obligations of confidentiality, Palantir gladly and comprehensively answered Abramowitz's questions and provided him with accompanying material and explanations. See id.

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PALANTIR TECHNOLOGIES, INC.'S APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782— CASE NO.

**C.**  **Abramowitz Misappropriates Palantir's Trade Secrets And Seeks To Patent Palantir's Inventions As His Own**

**1.**  **The Cyber Technology**

Since at least the beginning of 2013, a team of engineers at Palantir has been working on a project with the aim of developing systems and methods to better defend enterprises against cyber attacks on their networks. One aspect of this project was the ability to share data on cyber attacks between different participants in a monitoring system, in order to defend against cyber attacks more efficiently and to also prevent cyber attacks. Internally, Palantir referred to this technology as "CyberMesh" or "Cyber Mesh."

During this same time period, the same team at Palantir also addressed the need to improve cyber insurance systems. Specifically, Palantir recognized the difficulties businesses faced in getting efficient and reasonable insurance against cyber attacks because of the difficulties faced by insurance providers in establishing a suitable insurance model. Therefore, Palantir worked to develop a system that would permit the accurate determination of cyber attack risk. To do so, Palantir wanted to take advantage of its ability to access and understand customer data in real time.

As early as September 2013, Palantir's engineers noted significant progress in their work, and, in October 2013, met with Palantir's patent attorneys to discuss the possibility of protecting these advances. Palantir's exchanges with its patent attorneys would continue for months.

In 2014, Palantir informed Abramowitz about these inventions. As with other conversations with Abramowitz, these conversations were confidential in nature, and Palantir shared the information with Abramowitz solely because of his close relationship with the company and its management, which by this point had lasted for almost a decade. Specifically, on June 9, 2014, an employee of Palantir emailed Abramowitz stating:

> We are exploring launching our own cyber insurance business (in partnership with a traditional insurer) that takes a more active role. We'd actually deploy probes and sensors onto the networks of all our customers, actively monitoring in real time not only for attacks but also signs of weakness.

See id. at 17. A day later, Abramowitz met with one of Palantir's engineers in person to discuss the advances Palantir had made in this area.

- 5 -

During that meeting, Abramowitz expressed a desire to lead Palantir's cyber insurance business. See id. When Palantir declined, Abramowitz apparently decided to take Palantir's invention for himself, filing a patent application with the U.S. PTO. Abramowitz did so despite the fact that he has no scientific or technical training, has no record of technical invention or patent innovation and has, instead, made his fortune through equity investing.

Evidently not satisfied with seeking a U.S. patent for the inventions developed by Palantir, on October 20 and 21, 2015, Abramowitz filed two international patent applications seeking the Cyber Patents. See id. at 7-8.

EP 807—the first of the two Cyber Patents—concerns a dynamic security rating for cyber insurance products designed by Palantir to provide a modern insurance information system in the cyber security context ("cyber insurance systems"). This system is tailored to the unique features of cyber security and the risks associated with potential cyber attacks in a way cyber insurance currently is not. See id. at 9-10. The second Cyber Patent, EP 487, concerns the need for efficient cyber attack control and cyber information sharing and relates to a system for the joined and coordinated detection, handling and prevention of cyber attacks. See id. at 11-12.

While Abramowitz claims to be the sole inventor entitled to the Cyber Patents, the inventions and discoveries on which the Cyber Patents are based belong to Palantir, and only Palantir. Abramowitz's claim to ownership of these technologies is nothing more, and nothing less, than simple misappropriation of Palantir's discoveries—discoveries which Palantir came to through years of diligent effort and millions of dollars in investments. See id. at 15.

### 2. The Healthcare Technology

Since at least 2010, Palantir has worked extensively to identify a product with which to enter into and advance the clinical trial space. As a result of this research, Palantir developed data analytics services to improve the design of clinical trials of prescription drugs. Palantir's developed technology interpreted and analyzed various forms of data for patient recruitment in clinical trials held by pharmaceutical companies and academic institutions. See Waldeck Decl. ¶ 9; Bukowski Decl. ¶ 4. Further, Palantir also worked to develop data analytic services to perform insurance risk assessments, including, for example, patient diagnoses not accounted for by health insurance companies and

- 6 -

healthcare fraud risks. See Bukowski Decl. ¶ 4.

As with the cyber technologies, Abramowitz learned about Palantir's innovation in the healthcare sector through his communications with Palantir about Palantir's research and development. In February 2014, Abramowitz sought to broker a deal for the healthcare technology between Palantir and a third party. When it became clear that the introduction would not result in a consummated deal, Abramowitz decided to take the healthcare technology for himself by filing patent applications with the U.S. PTO claiming to have invented the healthcare technology.

As he did with the Cyber Patents, Abramowitz filed two international patent applications. EP 898—the first of the two Healthcare Patents—concerns a method and system for accurately assessing health insurance risk based on access to data including medical, health or drug related information. This process is able to produce an insurability risk metric, which can be applied to accurately price health insurance for individuals. Meanwhile, EP 273 concerns the need for better access to data to monitor an individual's suitability for participation in a clinical drug trial. The system proposed is able to obtain and filter relevant information from multiple dynamic sources to produce a drug trial suitability metric to determine an individual's ability to participate in, remain in, or benefit from a clinical drug trial.

### D. Palantir Fights Back

When Palantir learned of Abramowitz's treachery, it took steps to protect its inventions. Palantir brought interference proceedings before the U.S. PTO seeking to establish its rights with respect to the inventions claimed in Abramowitz's Cyber Patent applications. Those proceedings remain pending as the U.S. PTO considers whether to grant Abramowitz's applications. If the U.S. PTO decides to do so, it will, only then, adjudicate Palantir's claims, which are presently held in abeyance. Palantir is currently contemplating bringing additional proceedings before the U.S. PTO against Abramowitz in connection with the Healthcare Patents.

Palantir also brought an action in California state court seeking damages for Abramowitz's breaches of contractual obligations and violations of California state law. That action

too is pending.[1]

E.  **Palantir Commences the German Proceeding**

Finally, seeking to protect its intellectual property in Europe from Abramowitz, earlier this week Palantir brought an action in the Regional Court of Munich, Federal Republic of Germany, seeking a declaration that (i) Abramowitz was not entitled to file the Challenged Patents, and (ii) that it is Palantir, not Abramowitz, that is entitled, to patent and profit from the discoveries underlying the Challenged Patents.  Palantir also seeks a declaration that Abramowitz is obliged to compensate Palantir for all damages suffered due to the filings of the Cyber Patents as non-entitled person naming EP and Germany as designated states and discontinuing these applications.  See Waldeck Decl. ¶ 8.  In the coming weeks, Palantir anticipates bringing a similar action in the German courts to vindicate its rights with respect to the Healthcare Patents.  See id., ¶ 9; Bukowski Decl. ¶ 4.

**III.  REQUESTED DISCOVERY**

Through this Application, Palantir seeks 8 categories of documents directly relevant to the German Proceeding that are in the possession, custody and control of Abramowitz.

As set in more detail in the proposed subpoena attached as Exhibit A to the Bukowski Declaration, dated August 10, 2018, Abramowitz seeks non-privileged documents: (1) supporting Abramowitz's claim that he is an inventor of the technology described in the Challenged Patents; (2) concerning the conception of each challenged patent; (3) concerning the content, research, development, investment, or reduction to practice for each Challenged Patent; (4) concerning the ideas, concepts, systems, methods, or technologies described in the Challenged Patents; (5) reflecting any communication between Abramowitz, on the one hand, and Palantir, or any director, officer, or employee of Palantir, on the other, concerning the technology described in the Challenged Patents; (6) concerning any effort by Abramowitz to monetize the technology described in the Challenged Patents; (7) concerning Abramowitz's knowledge of the technology described in the Challenged Patents; (8) concerning communications between Abramowitz, on the one hand, and any third party, on the other, concerning the Challenged Patents or the technology underlying the Challenged Patents; and (9)

---

[1] Separately, Abramowitz has commenced litigation in Delaware, seeking to vindicate his alleged rights as Palantir's shareholder.

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PALANTIR TECHNOLOGIES, INC.'S APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782— CASE NO.

concerning any license granted by Palantir to Abramowitz or by Abramowitz to Palantir with respect to the technology covered by the Challenged Patents. Palantir also seeks Abramowitz's deposition testimony.

These factual issues are all directly relevant to Palantir's claims that Abramowitz was not the real inventor of the technologies underlying the Challenged Patents, and that these innovations, and the patents protecting them, belong to Palantir.

## IV. ARGUMENT

As demonstrated below, Palantir has satisfied all of Section 1782's statutory requirements, and the discretionary factors strongly favor granting the limited discovery requested.

Section 1782 is "the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp., 542 U.S. at 247. Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings." Id. at 247-49; Appl. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc., 747 F.3d 1262, 1268 (11th Cir. 2014) (commenting that the evolution of Section 1782 demonstrates a Congressional desire "to broaden the scope of assistance" and to allow district courts to more readily grant discovery); Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given increasingly broad applicability."). Today, Section 1782 allows a litigant in foreign proceedings to seek a "broad range of discovery" so as to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." Intel, 542 U.S. at 259, 262.

To obtain discovery under Section 1782, a party to a foreign proceeding need only demonstrate: (1) that the request is made by an interested person (2) seeking evidence (3) for use in a foreign proceeding and (4) that the person from whom discovery is sought is located in the district of the court receiving the application. Intel, 542 U.S. at 264; In re Republic of Ecuador, No. C-10-80225 MISC CRB (EMC), 2010 U.S. Dist. LEXIS 102158, at *4 (N.D. Cal. Sept. 15, 2010) (quoting In re Chevron Corp., 709 F. Supp. 2d 283, 290 (S.D.N.Y. 2010)).

Once Palantir establishes that the statutory requirements for Section 1782 relief are satisfied, this Court has discretion to grant the Application based on certain equitable considerations,

- 9 -

including: (i) whether the discovery sought is within the jurisdiction of the foreign proceeding, (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof gathering restrictions," and (iv) whether the request is otherwise "unduly intrusive or burdensome." See Intel, 542 U.S. at 264-65. Here, each of these discretionary factors supports granting Palantir's Application.

Further, district courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Intel, 542 U.S. at 252; Siemens AG v. Western Digital Corp., No. 8:13-cv-01407-CAS-(AJWx), 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013) ("A district court's discretion is to be exercised in view of the twin aims of § 1782"). Thus, Section 1782 has been broadly interpreted to permit U.S. courts to grant "wide assistance" to foreign litigants. See, e.g., John Deere Ltd. v. Sperry Corp., 754 F.2d 132, 135 (3d Cir. 1985) ("Section 1782's liberal intent to provide judicial assistance" has been "acknowledged" as Section 1782's "primary statutory goal"); In re Appl. of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992) ("imposing an additional burden" on Section 1782 applicants would "undermine the policy of improving procedures for assistance to foreign and international tribunals.").

As demonstrated below, the court should exercise its discretion and grant Palantir its requested discovery. This exercise of discretion is particularly warranted here, where the foreign litigation arises directly out of Abramowitz's decisions made in the United States to misappropriate Palantir's valuable intellectual property in Europe.

A. **Palantir's Application Meets the Section 1782 Requirements**

Palantir's Application clearly satisfies the four statutory requirements outlined by the Supreme Court in Intel: Palantir is an "interested person" in the German Proceeding, which are foreign proceedings, and through this Application Palantir seeks evidence from discovery subjects residing within this District. Intel, 542 U.S. at 264.

### 1. **Palantir is an "Interested Person"**

First, as Palantir is a party in the German proceeding it has commenced, and will be a party in the proceedings that Palantir anticipates commencing shortly, there is "no doubt" that it qualifies as an "interested person" within the meaning of Section 1782.  See Intel, 542 U.S. at 256 (there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person.'"). [2]

### 2. **The Application Seeks Documentary and Testimonial Evidence**

Second, evidence as defined in Section 1782 includes a "testimony or statement" of a person or the production of "a document or other thing."  In re Mak, No. C 12-80118 MISC SI, 2012 WL 1965896, at *1 (N.D. Cal. Mar 31, 2012).  Accordingly, Palantir's request for documents and deposition testimony constitutes evidence within the meaning of Section 1782.  See id.

### 3. **The Evidence Is For Use in a Foreign Proceeding**

Likewise, Palantir easily meets the requirement that the evidence sought through a Section 1782 application be for use in a foreign proceeding, as the German Proceedings—which, with respect to the Cyber Patents are pending, and with respect to the Healthcare Patents, will commence shortly, in the German regional court in Munich, Germany—satisfy the test for a "Foreign Proceeding."  See, e.g., Intel, 542 U.S. at 258 ("[t]he term 'tribunal' includes . . . conventional civil, commercial, criminal, and administrative courts") (citations omitted); Cryolife v. Tenaxis Medical, Inc., No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416, at *1 (N.D. Cal. Jan. 13, 2009) (granting Section 1782 application for patent infringement action in the Dusseldorf Regional Court in Germany).

Nor is there any dispute that the evidence sought by this Application is for "use in" a foreign proceeding.  To satisfy the "for use" prong, the evidence need only be relevant to the foreign proceeding.  See Weber v. Finker, 554 F.3d 1379, 1384-85 (11th Cir. 2009) (1782 discovery requests

---

[2] That Palantir has not yet commenced an action to vindicate its rights with respect to the Healthcare Patents is of no moment.  As the Supreme Court explained in Intel, an action need not be pending to warrant the exercise of Section 1782.  All that a Section 1782 applicant needs to show is that a potential foreign proceeding is within "reasonable contemplation," see Intel, at 247, a standard that Palantir has more than satisfied here.

1  need only comply with the Fed. R. Civ. P. 45 standard for relevancy).  The evidence need not actually,
2  or even probably, be discoverable or admissible in the foreign proceeding.  See Brandi-Dohrn, 673
3  F.3d at 80-81.  Here, there is no dispute that evidence concerning Abramowitz's knowledge and
4  understanding of the technology underlying the Challenged Patents, his communications about that
5  technology, and documents on which he intends to rely to support his entitlement to the Challenged
6  Patents are all directly relevant to the German Proceedings.

### 4. The Discovery Subject is Located in the Northern District of California

The Discovery Subject can be found in this district.  Abramowitz currently resides at 3455 Washington Street, San Francisco, CA 94118.  See Waldeck Decl. ¶ 4.

## B. The *Intel* Discretionary Factors Strongly Favor Granting Discovery

In this case, each of the four discretionary factors outlined by the Supreme Court in Intel, 542 U.S. at 264-65, strongly favors discovery.

### 1. The German Tribunal May Not Compel Discovery of Evidence in the United States

Where, as here, discovery sought through Section 1782 is not available in the foreign proceeding, the first Intel factor supports discovery.  Although the case law at times refers to whether the discovery target is within the foreign tribunal's jurisdictional reach, the more important issue is whether the requested discovery is obtainable through the foreign proceedings.  See In re AIS GmbH Aachen Innovative Solutions, No. 5:16-mc-80094-EJD, 2017 U.S. Dist. LEXIS 114288, at *14 (N.D. Cal. July 21, 2017) (affirming grant of 1782 application for discovery in relation to a German patent proceeding in which discovery target was a participant); In re Technik, No. C11-1386-JCC, 2011 U.S. Dist. LEXIS 162826, at *7 (W.D. Wash. Oct. 6, 2011) (holding that the first discretionary factor weighed in favor of discovery when discovery target was a participant in the German proceeding).

Although Abramowitz is a party to the foreign dispute, a number of foreign courts have granted Section 1782 relief, where, as here, the requested discovery is not available through the foreign proceeding.  See Waldeck Decl. ¶¶ 12-13; In re Clerici, 481 F.3d 1324, 1334-35 (11th Cir. 2007) (finding all Intel discretionary factors favored applicant although the respondent was a party to the underlying proceeding in Panama, the Panamanian Court was unable to enforce its own order to

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PALANTIR TECHNOLOGIES, INC.'S APPLICATION FOR ORDER PURSUANT TO 28 U.S.C. § 1782— CASE NO.

produce information because the respondent had left Panama); In re Technik, 2011 U.S. Dist. LEXIS 162826 at *7.  For example, in Heraeus Kulzer GmbH v. Biomet, the Section 1782 applicant sought discovery in the United States from its adversary in a German proceeding, whom it had sued for trade secret misappropriation in Germany.  Recognizing that the requested discovery was not available in German proceedings, and noting that "[t]he importance of American-style discovery to Heraeus' ability to prove misappropriation of its trade secrets by Biomet is undeniable," the court granted Heraeus' Section 1782 application.  633 F.3d 591, 596-97 (7th Cir. 2011) (authorizing Section 1782 discovery because the German litigant could not "obtain even remotely comparable discovery by utilizing German procedures"); see also In re Servicio Pan Americano de Proteccion, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (granting a 1782 application even though respondent was a party to the proceeding because of the limitations of Venezuelan discovery rules).

Further, the Discovery Subject and the documents targeted by this Application are located in the United States, making it more efficient to obtain that evidence through the compulsion power of a U.S. court.  See In re Application of Proctor & Gamble Co., 334 F. Supp. 2d 1112, 1114 (E.D. Wis. 2004) (granting 1782 application to subpoena a party to a foreign proceeding because the evidence was located in the United States and could be more efficiently obtained through a U.S. court); In re Sociedad Militar Seguro de Vida, 985 F. Supp. 2d 1375, 1380 (N.D. Ga. 2013) (granting 1782 application against both parties and non-parties to a foreign proceeding to promote efficiency). [3]

The first discretionary factor thus supports the grant of discovery here.

### 2. The German Tribunal Is Not Hostile To This Application

In evaluating this factor, courts should find in favor of discovery absent a "clear directive" – meaning "authoritative proof" – from the foreign country's judicial, executive or legislative declarations that specifically rejects the use of evidence gathered under foreign proceedings.  See Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995); In re

---

[3] See also In re Application of Auto-Guadeloupe Investissement S.A., No. 12-0221, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012) (discovery warranted against party to a proceeding when French procedural law would not have provided for the same scope of discovery); Consorcio Minero S.A., v. Doe Run Resources Corp., No. 11-0583, 2011 WL 4550200, at *3 (E.D. Mo. Sept. 30, 2011) (Peruvian court's lack of compulsion power weighed in favor of granting Section 1782 application).

- 13 -

IPCom, 2014 WL 12772090 at *3 (granting 1782 application when discovery target was a party to a German patent infringement proceeding because no suggestion that German judges are not receptive to U.S. discovery had been raised). Here, not only is there no such clear evidence, but to the contrary, there is every reason to believe that the German court would appreciate and benefit from this Court's assistance. See Waldeck Decl. ¶ 14. Here, no German procedure exists to prohibit such discovery; rather, German procedure simply does not provide for such discovery in Germany courts. See id. ¶ 15. There is no law, rule of evidence, or rule of procedure in the German Proceeding that prohibits Palantir from filing this Application or from seeking and obtaining the discovery requested here and using it in the German Proceedings. See id. ¶¶ 14-15. Indeed, this Court has previously granted 1782 requests in the context of German patent litigations, as have numerous others. In re Varian Med. Sys Int'nl AG, No. 16-mc-80048-MEJ, 2016 U.S. Dist. LEXIS 38911, at *1 (N.D. Cal. Mar. 24, 2016); Cryolife, 2009 U.S. Dist. LEXIS 3416 at *8-9 (granting request for document discovery and deposition testimony to assist German patent infringement litigation); see also Heraeus, 633 F.3d at 597 ("[T]here is nothing to suggest that the German court would be affronted by [the applicant's] recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence").

### 3. The Application Has Not Been Filed to Circumvent Any Law or Rule

The Application is brought in good faith and does not seek to circumvent German restrictions with respect to foreign proof gathering or other polices. See Waldeck Decl. ¶¶ 10, 15. To the contrary, German law, which governs the parties' dispute, in no way prohibits the parties from seeking the assistance of U.S. courts in collecting evidence. See Waldeck Decl. ¶¶ 14-17; In re Varian, 2016 U.S. Dist. LEXIS 38911 at *15 ("[Applicant] is unaware of any restrictions imposed by German courts in proof-gathering procedures that would prohibit it from obtaining and introducing the discovery it seeks through Section 1782."); In re IPCom, 2014 WL 12772090 at *3 ("U.S. courts have routinely granted applications under Section 1782 for discovery of evidence to be used in German proceedings."); In re Ex Parte Motorola Mobility, LLC, No. C 12-80243 EJD (PSG), 2012 WL 4936609, at *2 (N.D. Cal. Oct. 17, 2012) ("Because there is no indication in the record of an attempt to subvert a foreign tribunal's restrictions, the court finds that this factor weights in favor of [the applicant].").

Discovery should also be granted because the Application presents a more efficient way for Palantir to obtain highly relevant evidence that goes to the heart of the parties' dispute in Germany. Residing in San Francisco, Abramowitz is beyond the jurisdiction of the German Court. See Waldeck Decl. ¶ 4; Cryolife, 2009 U.S. Dist. LEXIS 3416 at *7 ("[The parties] agree that the German court cannot force [the discovery target also party to the German proceeding] to produce documents or provide testimony by compulsory means."). Thus, absent relief under Section 1782, Palantir will be deprived of key evidence for use in the German Proceeding.

### 4. The Discovery Requests Are Not Unduly Intrusive or Burdensome

Finally, the requested discovery is modest. Palantir seeks only documents and deposition testimony related to Palantir's claims in the German Proceeding; that is documented, concerning Abramowitz's claim that he is an inventor of the technology covered by the Challenged Patents, Abramowitz's knowledge of this underlying technology, and any attempts by Abramowitz to obtain rights to or monetize the technology underlying the Challenged Patents. This discovery is focused, highly relevant, and necessary for a fair and just resolution of the German Proceeding. This factor too supports the grant of Palantir's Application.

* * *

Accordingly, the Intel factors strongly favor the Court exercising its discretion to grant Palantir's Application. Indeed, courts in this Circuit have routinely permitted discovery under Section 1782, when, as here, the applicant has satisfied the statutory requirements and the above factors weighed in favor of granting relief. See, e.g., Cryolife, 2009 U.S. Dist. LEXIS 3416 at *15; In re Republic of Ecuador, 2010 U.S. Dist. LEXIS 102158, at * 14.

### C. This Court may and should order Abramowitz to preserve evidence pending compliance with an Order pursuant to Section 1782

Courts granting Section 1782 applications routinely order preservation of evidence, and the Applicant requests that the Court do so here. See, e.g., In re Eurasian Natural Resources Corp., No. 18-MC-80041-LB, 2018 WL 1557167, at *5 (N.D. Cal. Mar. 30, 2018) (granting a Section 1782 application and ordering preservation of evidence); In re Machida, No. 8:15-mc-00028-UA (DFMx), 2015 WL 12830388, at *2 (C.D. Cal. Nov. 3, 2015) (same).

## V. CONCLUSION

For the reasons set forth above, the Applicant respectfully requests that this Court (i) grant this Application for Discovery Pursuant to 28 U.S.C. § 1782 with respect to the documents and testimony requested herein and in Exhibits A and B to the Bukowski Declaration, (ii) order Abramowitz to produce said documents within 21 days; (iii) permit the deposition requested herein within the parameters set forth above; (iv) direct Abramowitz to preserve documents and evidence in his possession, custody or control, and (v) grant such other and further relief as the Court deems just and proper.

DATED: August 10, 2018

/s/ Christopher A. Stecher
CHRISTOPHER A. STECHER
KEESAL, YOUNG & LOGAN

TIMOTHY P. HARKNESS (*pro hac vice*)
DAVID Y. LIVSHIZ (*pro hac vice*)
WERONIKA BUKOWSKI (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP

*Pro Hac Vice Applications Forthcoming*

Attorneys for Applicant
Palantir Technologies, Inc.